AO 106 (REV 4/10) Affidavit for Search Warrant    AUSA Michelle Parthum, (312) 886-1317



**FILED**
12/8/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

Case Number: 1:23-mc-01088

The Zonko model K105 tablet bearing serial number 210-142217, further described in Attachment A

Ref. No. 2022R01018

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Anna Doyle, a Task Force Officer of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A**

located in the Northern District of Illinois, there is now concealed:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence, instrumentalities, and contraband.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1470, 2251, 2252, 2252A, and 2422(b) | Transfer of obscene material to minors; sexual exploitation of children; possession, receipt, and distribution of child pornography; and enticement of minors |

The application is based on these facts:

**See Attached Affidavit**,

Continued on the attached sheet.

_____
*Applicant's Signature*

ANNA DOYLE, Task Force Officer
Federal Bureau of Investigation
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: December 8, 2023

_____
*Judge's signature*

City and State: Chicago, Illinois

JEFFREY T. GILBERT, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT        )
                                    )
NORTHERN DISTRICT OF ILLINOIS       )

## AFFIDAVIT

I, Anna Doyle, being duly sworn, state as follows:

## I.  INTRODUCTION AND AFFIANT BACKGROUND

1.      I am a Task Force Officer with the Federal Bureau of Investigation ("FBI"). I have been so employed since approximately July 2016.

2.      As part of my duties as an FBI Task Force Officer, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A. I have received training in the area of child pornography and child exploitation and have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in multiple forms of media, including computer media. I also have participated in the execution of multiple federal search warrants, many of which have involved child exploitation and/or child pornography offenses.

3.      This affidavit is made in support of an application for a warrant to search the white Zonko model K105 tablet bearing serial number 210-142217, as further described in Attachment A ("**Subject Device 1**") for evidence, instrumentalities, and contraband, as described further in Attachment B, concerning transfer of obscene material to minors; sexual exploitation of minors; possession,

receipt, and/or distribution of child pornography; and enticement of minors, in violation of Title 18, United States Code, Sections 1470, 2251, 2252, 2252A, and 2422(b) (the "**Subject Offenses**").

4. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence, instrumentalities, and contraband related to the **Subject Offenses** are located in **Subject Device 1**.

## II. SUMMARY OF PROBABLE CAUSE

5. As demonstrated by the facts detailed below, there is probable cause to believe that, from approximately October 2019 through April 2023, PERCY JONES solicited and enticed multiple female children to create visual depictions of themselves engaged in sexually explicit conduct and to transmit those visual depictions of themselves to JONES via text and social media. JONES also used social media accounts, including Snapchat and WhatsApp, to further distribute those sexually explicit depictions to other individuals. As a result of this misconduct, JONES has been charged in this district in a two-count indictment with one count of distribution of child pornography, in violation of Title 18, United States Code, Section

2

2252A(a)(2)(A), and one count of possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B). *See United States v. Jones*, No. 23 CR 398.

6.      There is also probable cause to believe that evidence, instrumentalities, and contraband related to these offenses will be found on **Subject Device 1**, a tablet computer that was owned and possessed by JONES until it was seized by law enforcement in connection with JONES's post-indictment arrest on or about July 17, 2023. During a preliminary review of **Subject Device 1** conducted during a *Mirandized* interview of JONES on that same date, law enforcement identified evidence of suspected child pornography on **Subject Device 1**. JONES also told law enforcement during that interview that he had used **Subject Device 1** to engage in communications with minor girls, and that as recently as the night before his arrest and interview, an approximately ten-year-old girl had sent JONES a picture of her naked buttocks, which JONES received using **Subject Device 1**. Accordingly, the government seeks a warrant to search **Subject Device 1** to recover the known evidence and contraband contained therein, as well as any additional evidence, instrumentalities, and contraband that law enforcement may discover during a further review of the device's contents.

3

## III.  FACTS SUPPORTING PROBABLE CAUSE TO SEARCH SUBJECT DEVICE 1

### A.  Preliminary Investigation and Identification of JONES

7.     In or around November 2019, local law enforcement identified a minor victim ("Minor 1"), a 12-year-old girl living in Oklahoma, who had engaged in Facebook communications with a Facebook account with the username "Percy Jones." According to local law enforcement, Minor 1's mother performed a search of the tablet Minor 1 used to communicate with JONES and discovered a contact for the name "Percy Jones" with a listed phone number of 312-XXX-8975 ("Subject Phone 1"). Based on this information—specifically, the Chicago-based area code of the phone number listed for Jones—local law enforcement referred this information to FBI Chicago in or around March 2020.

8.     Law enforcement identified PERCY JONES as the user of the Facebook account "Percy Jones" based on the following:

a.     According to Facebook records, the Facebook account "Percy Jones" was created on or about January 8, 2019, with the email account "percyjones288@gmail.com." Facebook provided a verified number associated with the "Percy Jones" Facebook account of Subject Phone 1.

b.     According to records provided by Sprint (on or about April 10, 2020), Sprint provided service for Subject Phone 1, and beginning in or around April 2015, PERCY JONES was the listed subscriber for the phone, and the address listed for JONES was 1844 Drake Avenue, Chicago, Illinois.

4

c.     According to Illinois Secretary of State records (as of on or about March 31, 2020), JONES was issued an Illinois Identification card, which similarly listed his address as 1844 Drake Avenue, Chicago, Illinois. Illinois Secretary of State records also contain a photograph of JONES that appears on his Illinois Identification card. I viewed this image of JONES and determined that it showed the same individual depicted in the profile picture used for the "Percy Jones" Facebook account.

9.     With the consent of Minor 1's mother, Minor 1's tablet was later examined by law enforcement. A review of the extraction report from Minor 1's tablet revealed a contact for "Percy Jones" along with the contact number for Subject Phone 1. The extraction report also contained a second contact for "Percy Jones" listing the Facebook account associated with the percyjones288@gmail.com email address, *i.e.*, the Facebook account that JONES used to communicate with Minor 1.

10.     Pursuant to the extraction of Minor 1's tablet, law enforcement also reviewed screenshots of Facebook conversations between Minor 1 and JONES's Facebook account that were contained within the tablet's image gallery. According to those screenshots, JONES engaged in sexually explicit conversations with Minor 1 and asked Minor 1 to send JONES an image of Minor 1's genitals. For example, the following conversation, which took place on or about November 11, 2019, was captured in a screenshot by Minor 1's mother and submitted to local law enforcement:

Percy Jones: can I ask you something

Minor 1: Yes

5

Percy Jones: what color underwear you have on

Minor 1: I don't have anything on

Percy Jones: can I see

Minor 1: See what

Percy Jones: ur pussy

**B.    August 2021 Consensual Interview of JONES**

11.    Based on the information set forth above, on or about August 13, 2021, law enforcement approached JONES at 1844 Drake Avenue in Chicago (*i.e.*, the residence associated with JONES in the Sprint and Illinois Secretary of State records discussed above) and asked if JONES would agree to speak with law enforcement. JONES, who was with his grandmother's boyfriend ("Individual Y") at the time,[1] agreed to speak with law enforcement. JONES was asked if he preferred to be interviewed alone or in the presence of Individual Y, and JONES stated it was okay for Individual Y to remain during the interview.

12.    During the interview,[2] JONES admitted that approximately one year prior, he had used the "LIKEE" application to communicate with a minor female,

---

[1] In certain prior search warrant affidavits, Individual Y was mistakenly identified as JONES' grandfather; based upon JONES' statements during his post-arrest interview (*see infra*), I am now aware that Individual Y is JONES' grandmother's boyfriend.

[2] The interview of JONES was not recorded. The description of JONES' interview in this affidavit is a non-verbatim summary which is based upon a law enforcement report that in turn relied upon the memory of the law enforcement members involved in authoring that report. This summary does not include all topics discussed during the interview.

whom he believed had been 9 or 10 years old, and that they had exchanged nude images of each other's genitals.[3] JONES could not recall the minor female's name or user information. JONES stated he no longer had any images of this minor female on any of his devices. JONES stated he was confronted about this behavior by an out-of-state detective via telephone. JONES stated he was never interviewed in person and was not currently facing any charges in that matter. JONES admitted that he had also used Instagram and Facebook Messenger to communicate with minor females, as well as the website Omegle. JONES explained that Omegle was a chatting website, which does not require an account. JONES stated that he no longer had access to his Instagram and Facebook accounts, as he had deleted the accounts and applications from his current devices. JONES denied currently possessing images of minor females. JONES consented to a search of his then-current cell phone (Subject Phone 1) as well as his laptop computer, an HP 2000 Notebook ("JONES's laptop"). JONES signed a written consent form for both devices.

---

[3] Based on my training and experience, I am aware that LIKEE is a short-video creation and sharing application.

**C.    Review of Subject Phone 1**

13.    Upon reviewing Subject Phone 1,[4] law enforcement identified numerous communications in which JONES was engaging in sexual communications with minors, soliciting sexual images from minors, and/or exchanging sexual images of minors with others.  For example:

14.    Law enforcement identified and reviewed a Snapchat application[5] installed on Subject Phone 1, which was logged into an account with the username pjones979.[6] Within the application, law enforcement identified chats including the following:

a.    Between on or about July 23 and July 29, 2021, JONES and a Snapchat user ("Minor 2") exchanged the following communications:

JONES: How old are you if you don't mind me asking

Minor 2: I'm 13

JONES: Would it be to early to tell you that I love you [heart eyes emoji]

---

[4] Law enforcement initially reviewed Subject Phone 1 pursuant to JONES' consent and attempted to forensically extract the phone. Due to technical limitations in the forensic extraction software, a full image of Subject Phone 1 was not obtained. Accordingly, law enforcement later sought a warrant to search Subject Phone 1, which was issued by the Honorable Heather K. McShain on or about June 29, 2023 in Case No. 23 M 665.

[5] Based on my training and experience, I am aware that Snapchat is a mobile phone application for sending and receiving "self-destructing" messages, pictures, and videos.

[6] According to information provided by Snapchat, the pjones979 account had a display name of "Percy" and was associated with email address percyjones1993@icloud.com and the phone number 312-XXX-3945.  On or about April 5, 2022, the Honorable M. David Weisman issued a warrant to search JONES' Snapchat account, in Case No. 22 M 258.

8

. . .

JONES: Would you give me a lap dance while naked

     b.    On or about August 8, 2021, JONES exchanged the following communications with another Snapchat user ("Individual A"):

Individual A: U send first

JONES: No cause the last time I got played

Individual A: I did too

Individual A: Alr Amma[7] send one then u

Individual A: [sends image of naked buttocks of unknown female ("Minor 3")]

Individual A: She is 10 btw

JONES: Hold on

Individual A: Alr

JONES: [sent three images depicting a nude pre-pubescent female, approximately 10 years old, ("Minor 4")]

    15.    Law enforcement also identified and reviewed a WhatsApp application[8] installed on Subject Phone 1.[9] Within the WhatsApp application, law enforcement

---

[7] Based on my training and experience related to online chatting, "Alr" means "Alright" and "Amma" mean "I'm going to."

[8] Based on my training and experience, I know that WhatsApp is a messaging application which can be used, among other functions, to send images, videos, and messages to other WhatsApp users.

[9] The WhatsApp account installed on Subject Phone 1 was logged into an account with the account name "Percyjones" and the phone number associated with Subject Phone 1.

identified chats between JONES and another WhatsApp user with phone number 602-XXX-9206 ("Individual B"). The chats occurred between on or about October 10, 2019, and August 12, 2020, and reflected JONES and Individual B exchanging images of nude minors.

16.     For example, on or about October 30, 2019, JONES and Individual B discussed whether JONES was presently talking to any girls. JONES provided to Individual B the username for a girl ("Minor 5"),[10] but stated that she had not responded. On or about November 1, 2019, JONES stated, "I got new ones," and when Individual B asked who, JONES responded with the username he had previously provided for Minor 5 and sent an image of a prepubescent female, approximately 8 to 10 years old, with her vagina exposed.

17.     In addition, on or about February 24, 2020, JONES sent Individual B the image of a nude, prepubescent female with her vagina exposed. JONES claimed to have received the image from a girl JONES communicated with on the LIKEE application. Individual B asked JONES to show Individual B the chats between JONES and the girl. JONES responded, "Its on another app," and then sent a screenshot of chats that appeared to have occurred on the Snapchat application between JONES and another Snapchat user ("Minor 6").

---

[10] According to law enforcement's review of the Snapchat application in or around November 2021, the username JONES gave to Individual B appeared to be associated with an active Snapchat account.

**D.** **JONES' March 2023 Communications with Minor 7**

18.     Based upon information provided by the Midwest City, Oklahoma, Police Department, I am aware of the following:

        a.      On or about March 25, 2023, Individual C reported to the Midwest City, Oklahoma, Police Department that on or about March 23, 2023, s/he had observed his/her 11-yar old daughter, Minor 7, using Minor 7's cellular telephone with call number ending -3116 to engage in a Facetime video call with an adult male. According to Individual C, the adult male hung up after Individual C interrupted the call.

        b.      According to Individual C, s/he then searched Minor 7's phone to identify the counterparty to Minor 7's Facetime call and determined that the call had taken place with a contact saved to Minor 7's phone under the name "Percy [heart and other emojis]" and a listed phone number of 630-XXX-1314 ("Subject Phone 2").

11

c.      According to Individual C, during his/her search of Minor 7's phone, he/she also found images within the photo gallery showing the same adult male that Individual C had observed Minor 7 communicating with over Facetime. Individual C provided those images to law enforcement, one of which appears below. Based on my review of the image, it appears to be a screenshot that Minor 7 took during a Facetime call on or about March 17, 2023. Based on my prior experience interviewing JONES in person on or about August 13, 2021, I recognize the individual depicted in the image as JONES.



d.      According to Individual C, his/her review of Minor 7's phone also revealed that Minor 7 and JONES had been communicating on the mobile

12

applications "LIKEE" and "DUO."[11] According to Individual C, s/he reviewed a message from JONES in one of those applications in which he wrote words to the effect that "one lick" from JONES would cause Minor 7 "to fall in love." According to Individual C, Minor 7 told Individual C that JONES had sent Minor 7 images of his penis, but that Minor 7 had deleted all the messages she had exchanged with JONES via iMessage.[12] According to Individual C, s/he was able to see that, on or about March 15, 2023, Minor 7 had shared her location information with JONES via iMessage.

e.     With Individual C's consent, law enforcement conducted an extraction of Minor 7's phone. According to the extraction report, which I have reviewed, Minor 7's phone contained a contact for "Percy" with Subject Phone 2 as the listed phone number, which contact had a "created" date of on or about March 14, 2023. The extraction report further reflected that there had been approximately 140 Facetime calls and more than 1,000 text/iMessages exchanged between Minor 7 and Subject Phone 2 between approximately on or about March 14, 2023 and March 19, 2023.

---

[11] Based on my training and experience, I am aware that "DUO" is a mobile application created by Google for one-to-one or group audio and/or video calls.

[12] Based on my training and experience, iMessage is a mobile application that allows users of Apple devices, such as the iPhone, iPad, iPod touch, or Mac, to send texts, photos, or videos to each other, using Wi-Fi or cellular service. iMessage is exclusive to Apple device users.

f.     For example, the extraction report reflected the following text/iMessage exchanges between Minor 7 and JONES, using Subject Phone 2, which occurred on or about March 16 and 17, 2023:

> JONES: Yes would you let me take your cherry
>
> Minor 7: Yes / You can take anything
>
> JONES: Mmmmm / You don't mind if I take it when you so young
>
> . . .
>
> JONES: You go ***give me another show*** to night (emphasis added)
>
> Minor 7: Maybe
>
> JONES: I would love it
>
> Minor 7: I know
>
> . . .
>
> Minor 7: What do you like about my clothes that I were / And what do you like about my robe
>
> JONES: They sexy and that's real sexy
>
> Minor 7: Awww
>
> JONES: But ***I love you more naked*** (emphasis added)
>
> Minor 7: Awwww
>
> JONES: Yes
>
> Minor 7: Your turn
>
> JONES: Do you wish you could see me naked every night
>
> Minor 7: Yes / I wish I could lay with you naked

14

> JONES: Me to
>
> Minor 7: What do you want to happen
>
> JONES: Use fucking / Us

19.     On or about April 11, 2023, Minor 7 was forensically interviewed. The interview was video-recorded, and I have reviewed the video. During the interview, Minor 7 provided the following information:

a.     Minor 7 met a "boy" named "Percy DeShawn Jones" on the LIKEE application. JONES followed Minor 7's LIKEE account, messaged her, and asked her to be his girlfriend. Minor 7 told JONES that she was 11 years old, and JONES told her he was the same age and that he lived with his grandmother. JONES gave Minor 7 his phone number and the two then engaged in text messaging and Facetime calls.

b.     Minor 7 was shown printed images of text messages that had been exchanged between Minor 7's phone and Subject Phone 2. Minor 7 confirmed that she had exchanged those messages with JONES. In one such exchange, JONES wrote, "What you go do" and Minor 7 responded, "Suck it" and "Rub it." During the interview, Minor 7 explained that she wrote that she would "Suck it" and "Rub it" after Percy had shown her his "private part." Minor 7 stated that JONES had shown her his "private" during a Facetime Video call and had also sent her an image of it.

### E.     July 2023 Arrest and Interview of JONES and Preliminary Review of Subject Device 1

20.     On or about July 13, 2023, a federal grand jury in this district returned a two-count indictment against JONES, for distribution of child pornography (Count

15

One) and possession of child pornography (Count Two). *See* Case No. 23 CR 398, Dkt. 1. A warrant was then issued for JONES' arrest. Dkt. 5.

21. On or about July 17, 2023, law enforcement went to JONES' residence at 1844 S. Drake Avenue to place him under arrest.

22. Based on my conversations with the law enforcement officers present during JONES' arrest and my review of a report regarding JONES' arrest, I am aware of the following:

    a. While law enforcement was at JONES' residence, law enforcement encountered JONES as well as Individual X and Individual Y (JONES' grandmother and her boyfriend). Individual X stated that she is the leaseholder on the residence and has lived there for approximately twelve years.[13]

    b. After JONES was arrested and removed from the residence, certain law enforcement officers remained at JONES' residence to speak with Individuals X and Y.

    c. While Individuals X and Y were speaking with law enforcement inside the living room area of the residence, the law enforcement officers noticed, through an open door to a bedroom, that there was a white tablet computer laying on

---

[13] Law enforcement's conversation with Individuals X and Y was not recorded. The description of law enforcement's conversation with Individuals X and Y in this affidavit is a non-verbatim summary that is based upon a law enforcement report that in turn relied upon the memory of the law enforcement members involved in authoring that report. This summary does not include all topics discussed during the interview.

16

top of an air mattress in a bedroom. Individuals X and Y stated that the bedroom was JONES' and that the tablet should not have been inside the bedroom. Individual Y then retrieved the tablet—a white Zonko tablet bearing serial number 210-142217 ("**Subject Device 1**")—from the bedroom. Individual Y stated that he believed the tablet may have been provided to Individuals X and Y by the Department of Human Services. Individual X then signed a consent form authoring law enforcement to seize and review **Subject Device 1**.

### F. Custodial Interview of JONES

23. Following his arrest, JONES was transported to the FBI Chicago field office. While still at his residence, JONES requested a lawyer.[14] While he was en route to the FBI field office, JONES spontaneously uttered words to the effect that he did not want to wait for an attorney and that he wanted to speak with agents at that time. JONES then participated in a *Mirandized*, video-recorded interview.

24. During the interview, JONES stated that **Subject Device 1** belonged to him and that he had purchased it on Amazon a couple years before. JONES stated that he used **Subject Device 1** to access the internet and several mobile applications, including TextNow, Snapchat, Telegram, and JusTalk Kids. JONES stated that he

---

[14] The statements JONES made during his arrest and transport to the FBI field office were not recorded. The description in this affidavit of JONES' statements during that timeframe is a non-verbatim summary which is based upon a law enforcement report that in turn relied upon the memory of the law enforcement members involved in authoring that report. This summary may not include all statements JONES made during that timeframe.

used the TextNow application to get an internet-based phone number that he had used TextNow to text Minor 7 as recently as two weeks prior.

25.     JONES stated that he used the Snapchat application on **Subject Device 1** to communicate with individuals whom he believed to be minor females. JONES stated that the night before, he had used **Subject Device 1** to communicate on Snapchat with a minor female, whom he believed was approximately 10 years old, and who sent JONES an image of her nude buttocks.

26.     During the recorded interview, JONES gave consent to search **Subject Device 1**, and signed a consent form. Law enforcement then manually reviewed **Subject Device 1** alongside JONES.  During that review, law enforcement identified suspected child pornography, including, for example, images depicting adult men with their penises exposed near young girls.

27.     Later that day, after the interview concluded, JONES was appointed counsel, who withdrew JONES's consent to search **Subject Device 1**. Law enforcement then discontinued searching **Subject Device 1**. **Subject Device 1** has since remained in law enforcement custody; neither JONES nor his counsel has asked that **Subject Device 1** be returned.

## IV.     BACKGROUND INFORMATION CONCERNING CHILD PORNOGRAPHY

28.     Based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers affect

the methods used by people who possess, receive, distribute, and transport child pornography in these ways:

29.     Those who create child pornography can produce both still and moving images directly from a common video or digital camera, and other devices that create video and still images, including most cellular telephones and Personal Digital Assistants ("PDA") (*e.g.*, a Blackberry). Images from such devices can be transferred to a computer by attaching the device to the computer using a cable, or by uploading images from the device's memory card directly onto the computer or into a storage account accessible from any computer with the capability of accessing the internet (sometimes referred to as a "cloud" account). Once on the computer, images can then be stored, manipulated, transferred, or printed. This includes transfer to some of the same types of devices that are commonly used to create child pornography, such as cellular telephones and PDAs, as well as other computers. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography.

30.     The Internet allows any computer to connect to another computer. Electronic contact can be made to millions of computers around the world. The Internet allows users, while still maintaining anonymity, to locate (i) other individuals with similar interests in child pornography; and (ii) websites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government

agencies, to communicate with each other and to distribute child pornography. They can also distribute and collect child pornography with peer-to-peer ("P2P") file sharing, which uses software to link computers together through the Internet to form a network that allows for the sharing of digital files among users on the network. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet.

31.     The computer's capability to store images in digital form makes it a common repository for child pornography. Internal and external computer hard drives typically store vast amounts of data, and hard drives with the capacity of 500 or more gigabytes – which can store tens of thousands of images at very high resolution – are not uncommon. Other electronic storage media, such as thumb drives and memory sticks, can store hundreds of images and dozens of videos. Likewise, optical storage media, which includes CD-ROMs and DVDs, and electromagnetic storage media, such as floppy disks, also can hold hundreds of images and multiple videos. Such electronic, optical, and electromagnetic storage media are very commonly used by those who collect child pornography to store images and videos depicting children engaged in sexually explicit activity. Agents who execute child pornography search warrants often find electronic, optical, and/or electromagnetic

storage media containing child pornography in the same location as or near the computer that was used to obtain, access, and/or store child pornography.

32.     My training and experience, and the training and experience of other agents whom I have consulted, have shown the following:

a.     Individuals who possess, transport, receive, and/or distribute child pornography often collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or other images, as well as literature describing sexually explicit activity involving children. Such individuals frequently store their child pornography on multiple electronic, optical, and/or electromagnetic storage media, including not only their computer, but also on external hard drives, floppy disks, CD-ROMs, DVDs, memory sticks, thumb drives, cell phones, PDAs, and other such media. Many of these individuals also collect child erotica, which consist of items that may not rise to the level of child pornography but which nonetheless serve a sexual purpose involving children.

b.     Individuals who possess, transport, receive, and/or distribute child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail

groups, bulletin boards, Internet Relay Chat, newsgroups, instant messaging, and other similar interfaces.

c.      Individuals who possess, transport, receive, and/or distribute child pornography often collect, read, copy, or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or commercial profit. These names may be maintained in the original medium from which they were derived, in address books or notebooks, on computer storage devices, or merely on scraps of paper.

d.      The majority of individuals who possess, transport, receive, and/or distribute child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials. These individuals almost always maintain their collections in the privacy and security of their homes or other secure location. These individuals may keep their collections in locked containers including filing cabinets, safes, or lockboxes. These individuals may also maintain their collections in password-protected or encrypted electronic media. They may keep these passwords, and other information concerning their use of the computer, on handwritten or printed notes that they store in personal areas and around the computer.

e.     Possessors, traders and distributors of child pornography sometimes store their illegal images and videos online in remote storage accounts. Therefore, any records, documents, invoices and materials in any format or medium that concern online storage or other remote computer storage could indicate that a person is storing illegal material in an online storage account.

## V.     SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA

33.     Based upon my training and experience, and the training and experience of specially trained personnel whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.     Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

23

b.      Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

34.      In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

35.      In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s), within the meaning of 18 U.S.C. §§ 2251 through 2256, and are subject

24

to seizure as such if they contain contraband or were used to obtain or store images of child pornography.

## VI. PROCEDURES TO BE FOLLOWED IN SEARCHING ELECTRONIC STORAGE MEDIA

36. Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information found in **Subject Device 1** described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol.

37. The review of electronically stored information and electronic storage media found in **Subject Device 1** described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a. examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3)

25

contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

     c.     surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

     d.     opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

38.     The government will return any electronic storage media described in Attachment A within 30 days of the issuance of the warrant, unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

## VII.    CONCLUSION

39.     Based on the above information, I respectfully submit that there is probable cause to believe that the **Subject Offenses** have been committed, and that evidence, instrumentalities, and contraband relating to this criminal conduct, as further described in Attachment B, will be found in **Subject Device 1** (currently in the custody of the FBI), as further described in Attachment A. I therefore respectfully request that this Court issue a search warrant for **Subject Device 1** more particularly described in Attachment A, authorizing the seizure of the items

described in Attachment B, pursuant to the protocol described in the addendum to Attachment B.

FURTHER AFFIANT SAYETH NOT.

Anna Doyle
Task Force Officer
Federal Bureau of Investigation

Sworn to and affirmed by telephone 8th day of December, 2023

Honorable Jeffrey T. Gilbert
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF ITEM TO BE SEARCHED

The Zonko model K105 tablet bearing serial number 210-142217 ("**Subject Device 1**"). **Subject Device 1** was seized by law enforcement from the bedroom of PERCY JONES following his arrest on July 17, 2023.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence, instrumentalities, and contraband concerning the transfer of obscene material to minors; sexual exploitation of minors; possession, receipt, and/or distribution of child pornography; and enticement of minors, in violation of Title 18, United States Code, Sections 1470, 2251, 2252, 2252A, and 2422(b), as described in the Affidavit (the "**Subject Offenses**") as follows:

1.      Items, including electronic records, information, or communications, pertaining to the use, ownership, or control of **Subject Device 1**.

2.      Items, including electronic records, information, or communications pertaining to the **Subject Offenses**.

3.      Items, including electronic records, information, or communications pertaining to the identities of participants and/or co-conspirators involved in, or witnesses to, the **Subject Offenses.**

4.      Items related to the physical location of the users of **Subject Device 1** at or near the times of the **Subject Offenses**.

## ADDENDUM TO ATTACHMENT B

The government's review of electronic storage media, including cell phones, already in its possession shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment B.

The review of electronically stored information and electronic storage media described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures if those procedures are designed to minimize the review of information not within the list of items to be seized as set forth in Attachment B:

a. examination of categories of data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B;

c. surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B; and

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment B.

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment B. To the extent that evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that

2

same data or other item if it also contains evidence of crimes within the scope of this warrant.

AO 93  (Rev. 11/13) Search and Seizure Warrant                     AUSA Michelle Parthum, (312) 886-1317

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

The Zonko model K105 tablet bearing serial number
210-142217, further described in Attachment A

Case Number:  1:23-mc-01088

Ref. No. 2022R01018

## SEARCH AND SEIZURE WARRANT

To: Anna Doyle and any authorized law enforcement officer

      An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of Illinois:

### See Attachment A

      I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### See Attachment B

      **YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>December 22, 2023</u> in the daytime (6:00 a.m. to 10:00 p.m.).

      Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

      The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

Date and time issued: <u>December 8, 2023 at 11:49 a.m.</u>

_____
*Judge's signature*

City and State: <u>Chicago, Illinois</u>

<u>JEFFREY T. GILBERT, U.S. Magistrate Judge</u>
*Printed name and title*

AO 93 (Rev. 11/13)  Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |
| Inventory made in the presence of: | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF ITEM TO BE SEARCHED

The Zonko model K105 tablet bearing serial number 210-142217 ("**Subject Device 1**"). **Subject Device 1** was seized by law enforcement from the bedroom of PERCY JONES following his arrest on July 17, 2023.

**ATTACHMENT B**

**LIST OF ITEMS TO BE SEIZED**

Evidence, instrumentalities, and contraband concerning the transfer of obscene material to minors; sexual exploitation of minors; possession, receipt, and/or distribution of child pornography; and enticement of minors, in violation of Title 18, United States Code, Sections 1470, 2251, 2252, 2252A, and 2422(b), as described in the Affidavit (the "**Subject Offenses**") as follows:

1.      Items, including electronic records, information, or communications, pertaining to the use, ownership, or control of **Subject Device 1**.

2.      Items, including electronic records, information, or communications pertaining to the **Subject Offenses**.

3.      Items, including electronic records, information, or communications pertaining to the identities of participants and/or co-conspirators involved in, or witnesses to, the **Subject Offenses.**

4.      Items related to the physical location of the users of **Subject Device 1** at or near the times of the **Subject Offenses**.

## ADDENDUM TO ATTACHMENT B

The government's review of electronic storage media, including cell phones, already in its possession shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment B.

The review of electronically stored information and electronic storage media described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures if those procedures are designed to minimize the review of information not within the list of items to be seized as set forth in Attachment B:

a. examination of categories of data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B;

c. surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B; and

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment B.

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment B. To the extent that evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that

2

same data or other item if it also contains evidence of crimes within the scope of this warrant.